IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Steven Ivey,<br>　　Plaintiff,<br><br>v.<br><br>Henry M. Paulson, Secretary,<br>Department of the Treasury<br>　　Defendant. | Case Number 07-0748 (RJL) |

## ANSWER

Defendant Henry Paulson, Secretary of the United States Department of the Treasury (the "Department" or the "Agency"), by and through his undersigned counsel, hereby answers Plaintiff's First Amended Complaint and Complaint as follows:[1]

### AFFIRMATIVE DEFENSES

#### First Affirmative Defense

The doctrines of res judicata and/or collateral estoppel bar Plaintiff's claims.

#### Second Affirmative Defense

The Court lacks jurisdiction over some or all of Plaintiff's claims.

#### Third Affirmative Defense

Plaintiff has failed to exhaust administrative remedies.

---

[1] Plaintiff's First Amended Complaint should supersede the original complaint, thereby making no response to that complaint necessary. However, it appears that Plaintiff may have intended the amended complaint to be a continuation of the first complaint he filed, rather than replacing it. Accordingly, this answer includes Defendant's response to both the original complaint and the amended complaint.

<div style="text-align:center"><u>**Fourth Affirmative Defense**</u></div>

Plaintiff has failed to state a claim upon which relief may be granted.

Defendant reserves the right to assert additional defenses, affirmative or otherwise, upon further investigation and discovery into the matters alleged.

<div style="text-align:center"><u>**SPECIFIC RESPONSES**</u></div>

<div style="text-align:center"><u>**COMPLAINT**</u></div>

The paragraphs in the original complaint are not numbered, although some contain lettered headings. Defendant has numbered a copy of that complaint, and includes that numbered complaint as Exhibit 1 to this answer. The following responses correspond to the complaint as numbered in Exhibit 1:

1. Defendant admits that Plaintiff was an Internal Revenue Service ("IRS") employee. Defendant denies the remaining allegations of Paragraph 1.

2. Denied.

3. Defendant admits that Plaintiff worked the night shift, but further state that Plaintiff's tour of duty varied during the time he was employed by the IRS. Defendant admits that Plaintiff was a measured employee, but denies Plaintiff's description of the work processing. Defendant admits that tax returns were reviewed by employees in the Code and Edit functions prior to entry by employees in Data Conversion. Defendant denies the remaining allegations of Paragraph 3.

4. Defendant admits that Plaintiff was a measured employee. Defendant further states that as a measured employee, Plaintiff had two critical elements of quality and quantity. Defendant further states that: (1) the ratings on these elements were determined by the TEPS computer

program; (2) the data that determines the Quantity rating is totally dependent upon the employee reporting the number of documents worked on his timesheet; and (3) the Quality data is determined by reviews conducted by the Quality Review staff. Defendant denies the remaining allegations of Paragraph 4.

5. Defendant admits that the length of employment for a seasonal employee is dependent upon the employee's release/recall ranking, which is determined by the employee's evaluation. Defendant denies the remaining allegations of Paragraph 5.

6. Defendant admits that it was quicker for an employee to process a return on which a taxpayer affixed the preprinted return label versus handwriting the information on the tax form. Defendant denies that returns with labels were routed to preferred employees. Defendant admits that some people have handwriting that is easier to read than others. Defendant admits that names with hyphens could make it more difficult to locate a taxpayer. Defendant admits that, at one time, there were problems processing the tax returns of taxpayers who were married and filed joint tax returns if the spouses' social security numbers were listed in the reverse order than they were listed on the returns the taxpayers submitted the prior year. Defendant denies the remaining allegations of Paragraph 6.

7. Defendant admits that in many cases computer generated returns had different formatting than returns printed by the IRS. Defendant denies the remaining allegations of Paragraph 7.

8. Denied.

9. Denied.

10. To the extent the allegations of Paragraph 10 purport to characterize federal statutes, Defendant respectfully refers the Court to the relevant statutory provision(s) for a true and

complete statement of their requirements, and denies all contrary allegations. The remaining allegations of Paragraph 10 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendant denies the allegations of Paragraph 10.

11. Paragraph 11 sets forth Plaintiff's prayer for relief, to which no response is required. To the extent a response is deemed necessary, Defendant denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

12. Paragraph 12 sets forth Plaintiff's prayer for relief, to which no response is required. To the extent a response is deemed necessary, Defendant denies that Plaintiff is entitled to the relief requested or to any relief whatsoever. Defendant further avers that any compensatory damages award would be subject to and limited by 42 U.S.C. § 1981a.

13. Paragraph 13 sets forth Plaintiff's request for a jury trial and for a court-appointed attorney, to which no response is required.

## **AMENDED COMPLAINT**

Defendant responds to the separately numbered paragraphs and prayer for relief, utilizing the same paragraph numbering as Plaintiff's complaint, as follows:

1. This paragraph contains Plaintiff's request to amend his complaint, to which no response is required.

2. Denied.

3. Defendant admits that Plaintiff is attempting to amend his complaint. Defendant denies the remaining allegations of Paragraph 3.

4. Denied.

5. Defendant admits that Attachment Four to the amended complaint is an email from Robert

Hall to the identified recipients. Defendant denies the remaining allegations of Paragraph 5.

6. Denied.

7. Denied.

8. Denied.

9. Defendant lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 9, and therefore denies them.

10. To the extent the allegations of Paragraph 10 purport to describe the requirements of the Federal Rules of Evidence, Defendant respectfully refers the Court to the relevant rule(s) and denies all contrary allegations. Defendant lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10, and therefore denies them.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied

19. Denied.

20. To the extent the allegations of Paragraph 20 purport to characterize attachment two to the amended complaint, Defendant respectfully refers the Court to the attachment for a true and complete statement of its contents, and denies all contrary allegations. Defendant denies the

remaining allegations of Paragraph 20.

21. Denied.

22. To the extent the allegations of Paragraph 22 purport to characterize attachment two to the amended complaint, Defendant respectfully refers the Court to the attachment for a true and complete statement of its contents, and denies all contrary allegations. Defendant denies the remaining allegations of Paragraph 22.

23. Denied.

24. Denied.

25. Denied.

26. To the extent the allegations of Paragraph 26 purport to characterize the Restructuring and Reform Act of 1998, Defendant respectfully refers the Court to that statute for a true and complete statement of its requirements, and denies all contrary allegations. Defendant denies the remaining allegations of Paragraph 26.

27. To the extent the allegations of Paragraph 27 purport to characterize 5 U.S.C. § 7513, Defendant respectfully refers the Court to that statute for a true and complete statement of its requirements, and denies all contrary allegations. Defendant denies the remaining allegations of Paragraph 27.

28. To the extent the allegations of Paragraph 28 purport to characterize the Restructuring and Reform Act of 1998, Defendant respectfully refers the Court to that statute for a true and complete statement of its requirements, and denies all contrary allegations. Defendant denies the remaining allegations of Paragraph 28.

29. Denied.

30. To the extent the allegations of Paragraph 30 purport to characterize a Merit Services Protection Board opinion, Defendant respectfully refers the Court to that opinion for a true and complete statement of its requirements, and denies all contrary allegations. Defendant denies the remaining allegations of Paragraph 30.

31. Denied.

32. Denied.

33. Paragraph 33 sets forth Plaintiff's prayer for relief, to which no response is required. To the extent a response is deemed necessary, Defendant denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

WHEREFORE, Defendant requests the Court enter judgment in its favor and against Plaintiff, that the complaint be dismissed in its entirety with prejudice, that Defendant recover its costs in this action, and for such other relief as may be appropriate.

Dated: June 29, 2007             Respectfully submitted,

  /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

  /s/ Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. BAR # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 514-7198  Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**CERTIFICATE OF SERVICE**

 I hereby certify that on this 29th day of June, 2007, I caused the foregoing Answer to be filed via the Court's Electronic Case Filing system, and to be served upon Plaintiff by first-class mail, postage prepaid, addressed as follows:

Steven Ivey
7611 S. Obt, # 278
Orlando, FL 32809

FILED
APR 2 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN IVEY, pro se,
7611 S. OBT, #278
Orlando, FL., 32809,

    Plaintiff,

                                  Civil Action No. 07-748
V.

HENRY PAULSON, Secretary, et al.,
U.S. Department of the Treasury, et al.,
1500 Pennsylvania Ave, NW
Washington, DC, 20220,

    Defendant.

## COMPLAINT PURSUANT TO RULE 8 OF FEDERAL RULES OF CIVIL PROCEDURE

(1)    The jurisdiction for this case as per Federal Rules of Civil Procedure, Rule 8(a), can be seen from the collective records and practices of the US Department of the Treasury in determining rating and rank for a data transcriber in its IRS Tax processing Center. The plaintiff was employed with the defendant under which time and, subsequent, administrative and judicial actions in determining of EEO claims, the defendant unduly discriminatory practices with the use a flawed rating

1

RECEIVED
MAR 1 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

system in a bias and prejudicial manner. The use of this rating system as used by the defendant has created a bias and prejudicial effect in any administrative and judicial decisions for the plaintiff. The claim herein concerns the, additional, discriminatory way in which batches of work and rating of those batches prejudicially affected the plaintiff as a white males but not to more favored females and blacks. However, because defendants rating scale is flawed without any corrections it has a negative affect to some degree for all data transcribers at the tax processing center. This degree to each data transcriber is determined on how the defendant applies and misuses the scale for whatever desired affect. The rating scale is a tool used to unduly influence and affect a data transcriber and his employment with the defendant.

(2) These no-fault problems had damaging effect in job functions and were not monitored or corrected so as to ensure proper rating scales. The inappropriate use of a flawed system contributed to a rating that hindered the plaintiff's employment process; pay / grade scale; and credibility in administrative and judicial proceedings. These uncorrected and unmonitored problems also affect to some degree the employment status of approximately 500 data transcribers from 1999 to the present.

I.  **Description of the way a data transcribers are to process a batch of 100 returns. Then repeating for each batch of work.**

(3) The plaintiff's schedule for work was from 6:00 pm till 2:30am; Sunday nights to Thursday nights. The plaintiff was required to be ready to log into my computer terminal at 6:00 with a batch of work; 100 taxpayer returns of 1040EZ, 1040A, or 1040 programs. When the plaintiff logged in with his specific log in with a batch of work, whether new or from the night before, the <u>clock would start on that batch of work</u>. This is similar to a meter on a taxi cab clocking the fare once the trip starts. Because of this the rating for any batch of work is determined by the number of returns entered into the respective program per hour (# of docs / hr). The clock would continue to run as long for the duration of the batch. This is the role of a data transcriber in the assembly line working of processing taxpayers returns. Prior to a data transcriber in the Data Conversion section entering a return in the programs, there are prior sections such as with clerks who routed different returns in appropriate groups; labeling the returns with a serial ID number; and Code and Edit for red ink markings of codes.

(4) An affecting determination of rating is the number of mistakes made by a data transcriber while entering the documents in the programs. There are checks done on batches of work within the Conversion section by

3

unit managers and/or a lead. The number of mistakes allowed is generally 3 to 4 documents for a batch of work. This in turn is for a period of time in establishing a maximum number of mistakes for a period of time and batch of work. I was told varies requirements for this rating but most vary for different programs.

(5) There are approximately 500 data transcriber repeating this process for day and night shifts for the tax season ranging from January to July. The length of employment for the season depends on rank of the data transcriber, therefore, the higher the rank the possibility of longer employment for the year. The plaintiff's rank ranged from 350 to 370 out of the 500. The ranking also determined when a data transcriber was called back from furlough. The below were factors and circumstance that affected the flow of the batch work process, consequently, affecting rating / rank because the plaintiff was charged an error for these no-fault problems.

(6) **II. The following Faults of IRS rating system affected my rating and rank:**

A. There were Problems with the Program and Processing Systems as follows:

(a) Label verses handwritten meant the difference of entering a few code characters of the IRS printed label included with the 1040 mailings and that

4

of retyping the complete name, address, and social security number of the taxpayer. The grouping of the labels for faster processing was routed to preferred employees.

**(b)** Illegible tax returns wherein a data transcriber had to determine personal handwriting which varied in degree of clarity and accuracy.

**(c )** The hyphen of Hispanic and female last names added confusion to the searching of past records. For searching the record the first three letters of the taxpayers last name are used. With hyphened last names sometimes taxpayers leave the hyphen off so the second part of the last name not the first part was used. (example: if Garcia-Carlos was the name then the 3 letters as G-A-R, however, if the hyphen is not there, Garcia Carlos, then the 3 letters used were C-A-R).

**(d)** The mistaken program for spouses social security number (ss#). When a married couple enters the label identification if the man fills the form he puts his name and ss# first. If the woman does it she puts her name and ss# first. The information does not change the ID of the return from past years just the order. There can be other variations of this mistake as did happen. The fault here is in the program which did not have a "do-loop" written in the program.

5

(e) Mistakes made prior to a data transcriber in the assembly line process.

(7) Problems could result for a data transcriber and errors charge to him when the batches were formulated improperly such as:

(1) Mis-numbering of a batch of returns - meaning more than the normal 100 or less; such as 110 or 95 returns. This result in the serial numbers of the return not matching the program required 100 as automatically do as the returns are entered into the program. This assigned error to the data transcriber because the correction of these had to be done while longed into the system. The could mean that a rating of 100 / hr could be reduced to 40 / hr which is not the fault of a data transcriber.

(2) The unspecified number of attachments to a return were not established in the determination of the rating scale.

(3) Computer generated tax filing v. supplied 1040 forms. With returns sent via the mail the IRS tax forms are used as printed front and back. However, if a taxpayer filed online the return as printed by the IRS would be approximately 4 pages per side of a 1040. The print size was also much different for spacing. This meant more paperwork for a computer filing that resulted in 50 returns per batch of work instead of the usual 100. It, also, resulted in lengthy times for locating the codes to enter into the programs.

Case 1:07-cv-00748-EGS    Document 8-2    Filed 06/29/2007    Page 7 of 10

(8) B.    **Problems of Inappropriate and Illegal activities:**

**(a)** Interruptions of work in progress to sign notices; review corrections of IRS manual mistakes; and improper solicitations from other employees. These affect time on program and was not regulated even after complaints of such as they affected rating / rank.

**(b)** Segregating the batches of work:

(1) For some unknown reason all the Jennifers in FL, GA, & SC were batch together.

(2) Bad documents for reading were routed to the newbies ? Probationary employees.

(3) Illegible returns to unflavored employees.

**(c )** Changing of the Presidential Donation Box (PDB) on the returns was a prohibited practice which the plaintiff did not participate in, but was charged an error for each incident.

**(d)** Use of illegal vouchers to mis-appropriate funds to cover up favored employees in the prior areas of the assembly line process such as C & E.

**(e)** Failure to correct problems and prohibited practices so has to receive correct rating scale and more accurate ranking.

(9) **III.    Damages and Improper Effects on plaintiff:**

**(a)** Effected inaccurately the pay scale for classification of grade for purposes of federal employment.

7

**(b)** Negatively impacted the determination of bonus incentive pay for accurate work completed.

**(c)** Improperly effected ranking as compared to the total of data transcribers for the purpose call back and for length of employment.

**(d)** Used prejudicially for terminating me after reporting EEOC and MSPB prohibited practices.

**(e)** The last ratings were compiled without notice or proper verification when looking for reasons to terminate the plaintiff.

**(f)** Continued refusal to correct or resolve the mistakes and altering of rating scale to discredit the plaintiff in complaint processing.

**IV.     Authorities determining rating issues:**

(10.)

The following may be of assistance in determining the above violations because they concern the requirements and efficiency of the rating system. Both **5 USCS § 4302 (4303)**- Performance Appraisal Plan, and **5 USCS § 7513**- Efficiency of Federal Service were created to promote and maintain effective appropriate work performance ratings. It is the responsibility of every agency to review its own performance standard for comparable defects and to change them appropriately.

(a) Courts decision with regards to particular performance standard may not

be taken as direction to freeze standard into place, rather, agencies are obligated to review existing standards and change them as evaluation techniques improve and experience gained. **Weirauch v Department of the Army**, (1986, CAFC) 782 F 2d 1560.

**(b)** Not permitting accurate objective measurements of employee's level of achievement nor reasonably informing employee of what is acceptable performance are invalid performance statutes. **Eibel v Department of the Navy**, (1988, CA FC) 857 F 2d, 1439.

**(c)** General standard of promoting efficiency of service is adequate for removal or discipline of performance eligible civil service employees, but promotion of efficiency of service is not restricted to testing employee's work efficiency or performance on job. **Hoover v U. S.** (1975) 206 Ct Cl 640, 513 F 2d 603.

**V. Applicable Civil Authorities:**

Under civil statutes **42 USCS § 1981, 42 USCS § 1983, 42 USCS § 1986, 42 USCS § 1988** and **42 USCS § 2000e** the Plaintiff is entitled to relief for the above listed violations. This is pursuant to Federal Rules of Civil Procedure 8(a) and Title VII of the Civil Rights Act of 1964, and Civil Rights Reform Act of 1978.

9

## VII. Relief:

(12.) The plaintiff is seeking action to remedy the situations. To further, the plaintiff is seeking compensatory damages, future offset damages, cost involved in the prosecution of the complaint, and related fees of processing this complaint. For review and correction for the data transcriber rating system of the defendant.

(13.) The plaintiff is requesting a jury trail for this case. The plaintiff is requesting that the Court appoint the plaintiff an attorney. (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e *et seq*: the Rehabilitation act of 1973, as amended, 29 U.S.C. § 791(c).

_Mar. 12, 2007_
Date

_Steven Ivey_, Plaintiff