UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEI
SEP 13 20
NANCY MAYER WHITTING
U.S. DISTRICT COL

| | |
|---|---|
| Steven Ivey, | ) |
| Plaintiff, | ) |
| V. | ) CA No. 07- 0748 |
| | ) EGS |
| HENRY PAULSON, Secretary, et al., | ) |
| U.S. Department of the Treasury, | ) |
| Defendant. | ) |

## MOTION OF JOINDER OF PARTIES AS PER RULE 19 AND TO AMEND AS PER RULE 15

**I. JOINDER OF PARTIES;** NTEU, et al.,- Doug Van Buren, Lisa Porter, and Angela Strong.

34.     For the above captioned case the plaintiff is amending, as per Rule 19, the defendants to include the NTEU, et al., specifically, Doug Van Buren, Lisa Porter, and Angela Strong, union representatives. These parties were instrumental in assisting Paulson, et al., in preventing proper resolve with problems with the rating system and encouraging the use of such a flawed performance system to terminate the plaintiff under the circumstances of reporting rating violations. The NTEU, et al., was involved in the assisting of negative credibility effects to the plaintiff in his pursuit of corrections to the rating system and during administrative review. The joinder of parties are similarly situated in the claims of the plaintiff as the defendant, Paulson, et al.; this can be seen from attachments # 2, 3, and 4, of the complaint.

1

## II. AMENDED COMPLAINT:

35.		The plaintiff as per Rule 15 is requesting the amending of the original complaint with the following, for clarity and additional allegations, involving the NTEU.

### A. Administrative Review:

36.		The improper involvement of the NTEU in the plaintiff's claims against Paulson, et al., and the subsequent administrative review, raises the issue as to who has proper administrative jurisdiction over the conspiring of Paulson, et al.., with the NTEU, et al. ?   Would it be the EEOC or FLRA, (Fair Labor Relations Authority) ? Because Robert Hall and Doug Van Buren were encouraging the plaintiff to resign by signing a false record that would incriminate the plaintiff and void reported problems with the rating system, attachment # 2, there has not been a clear determination of administrative remedy.  It is improper to coerce an employee from competitive employment as a violation of  5 USCS § 2302.   Significantly, it is the job function of data transcribers to report problems with the rating system, attachment # 7, P. 1, column 2, "Duties."   Therefore, it was improper for Doug Van Buren to coerce the plaintiff in the March 5, 2001, meeting, attachment # 2, which in turn contributed to wrongful termination of the plaintiff.  Additionally, from attachment # 3.

37.		The claims and issues can not be fully adjudicated until both Paulson, et al., and the NTEU, et al., are brought together in one civil action, because the effects of damage in the claims is not restricted to just one party.  The administrative remedies have been made to the EEOC and the FLRA, but neither of these authorities have "exclusive remedy" over the actions of the two separated parties when

committed together. Thus, the determining of subject mater jurisdiction is over the combined actions rather than separately, resulting in neither the EEOC nor the FLRA having established exclusive remedy for the combined actions. The plaintiff has address this question to the EEOC and the FLRA without either establishing clear administrative authority for resolve.

**B. Additional Claims**:

38.		From the above there is a resulting negative collective effect to the plaintiff in the process of his reporting of the rating problems that affect data transcribers. From instant credibility of the IRS/Treasury, compounded by that of the NTEU, the deflections from the issues were created causing compounded harm to the plaintiff.

40.		Because the plaintiff was in defense of rating issues, involving illegal activities, there were Fifth Amendment violations., from due process and self incrimination. There is, additionally, the interest of other data transcribers and the public involved.

**C. Additional Facts**:

1. From Paulson, et al.'s, answers to the original complaint as filed, June 29, 2007, there is a denial to any connection or wrong doing with attachment # 4. However, this contradicts the NTEU's denial of involvement with attachment #4.

2. Because Robert Hall in attachment #4 involves Lisa Porter and Angela Strong, NTEU reps, there is a significant reasoning as to why Robert Hall if in lying about this incident would used 2 NTEU reps to support the lie, when these 2 could easily deny any involvement in the allegation.

3. When informed of the use of Lisa Porter and Angela Strong, the NTEU has made no effort to protect these 2 reps with what the NTEU effectively states is a lie on the part of Paulson, et al.

4. Neither defendants have provide any documentation as to Lisa Porter and Angela Strong's reaction and decisions with what can be concluded as incrimination of them.

5. Because of attachment # 1, and Paulson, et al.'s claim that the plaintiff was terminated for rating issues, demonstrates that Doug Van Buren had, no NTEU nor IRS/Treasury justification for being involved, even more particularly to encouraging resignation.

6. In filing the claims of the above, and, the original, complaint with the FLRA, there was no determination made to the plaintiff's questioning of the FLRA as to where proper administrative authority rest for the combine actions of Paulson, et al., and the NTEU, et al.

7. The NTEU, et al., did not recognize Paulson, et al.'s perpetuation of the flawed rating system contradicting the NTEU's mission to represent employees in such unfair practices. Instead the NTEU, et al., wanted to rely on instant credibility to disguise assistance in preventing correction of reported problems of the rating system.

8. Neither, Paulson, et al., nor the NTEU, et al. informed the plaintiff of the appeal rights to the FLRA. This is significant because the NTEU has cited the FLRA as "exclusive remedy" for any resolve of NTEU violations. This means that the NTEU participated in the actions against the plaintiff but did not inform the plaintiff of the right to appeal to the FLRA, contrary to the requirement of the IRS/Treasury to inform the plaintiff of EEOC and MSPB appeal rights.

9. Paulson, et al., and the NTEU, et al., used built in prejudices with attachment # 4 to solicit discrediting of the plaintiff in order prevent corrections to the rating system and to prevent proper adjudication.

9-8-07
Date

Steven Ivey, Plaintiff

**Attachments:**

# 7- Data Transcribers job duties.

## Certification of Service

The attached document was sent by mail to:

Office of the Clerk
US District Court for DC
333 Constitution Ave, N.W.
Washington, DC, 20001

And by regular mail to:

Jeffery Taylor
Department of the Justice
555 Fourth St., NW
Washington, DC, 20530

9-8-07
Date

Steven Ivey
Plaintiff

SPD No. 92182N

**INTERNAL REVENUE SERVICE**
**STANDARD POSITION DESCRIPTION**

**Classification Title:** Data Transcriber
**Classification:** GS-356-3
**Organizational Title:** Data Transcriber

Remarks: 9/29/1999 SPD corrected to annotate career ladder.

I certify this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

_____
Signature of Immediate Supervisor

_____
Date

_____
Title
*************************************
(This position is one grade level below the full working level of GS-4, SPD #92183N as described in this SPD. This position does not meet the full intent of mental demands found at the full working level.)

**INTRODUCTION:**

The employee performs original entry or supplemental data capture for a wide variety of tax documents/forms from images, paper, and/or other sources.

**DUTIES:**

Transcribes and/or key verifies a wide variety of taxpayer prepared tax returns, related schedules, and/or documents.

Identifies missing, incorrect, and unrecognizable data and takes appropriate course of action to resolve errors, or refers to others for correction.

Performs other duties as assigned.

**KNOWLEDGE:**

Detailed knowledge of a variety of correction modes, procedures, and status messages to perform data capture.

Knowledge of the characteristics of a wide range of documents/forms to associate with program controls and transcribing procedures.

Knowledge of the operating features of equipment to use in transcribing data.

**LEVEL OF DIFFICULTY:**

General guidance is provided for ongoing assignments and specific instructions are provided on new, difficult, and unusual assignments. The employee enters and verifies the accuracy of data which requires interpreting and applying an extensive body of established procedures to a wide variety of complicated assignments. Completed work is subject to normal quality review procedures. Work is performed in an office setting and good eye-hand coordination and finger dexterity are required.

**ASSIGNMENT:**

The purpose of the work is to capture data from a variety of source documents into the tax processing system. The work affects the quality and efficiency of completed products and services to the taxpayer.

**COMMUNICATIONS:**

*Attachment #7*

SPD No. 92182N

Contacts are with employees in the same or related units to exchange information, identify problems, make recommendations. The employee also provides guidance and training to other employees in the work group.

**EVALUATION STATEMENT:**

**Series and Title Determination:**

The work entails transcribing alphabetic and numerical data from tax returns and documents into a computer via direct data entry key station terminals. This work is described in the OPM PCS for GS-356, Data Transcriber Series (8/75).

**Grade Determination:**

Nature of Assignments:

The work requires the employee to locate, identify, and correct data on uncoded and/or nonstandard source documents, and accomplish work in priority order. There are a wide range of source documents, some of which are multi-use forms. The data is often misplaced or contains errors, discrepancies or omissions. The employee reconstructs steps taken to locate data for appropriate placement or to identify sources of problems. The employee determines the course of action in order to find, correct, and verify data for proper entry. This meets Conditions 1, 2, and 7 identified in the GS-4 factor level description, therefore, this factor is evaluated at the GS-4 level.

Mental Demands:

Work is performed in a production line atmosphere, involving tight and inflexible deadlines; with tax laws, regulations, procedures, and tax forms constantly changing. The employee is expected to know and apply the appropriate procedure for a wide range of programs, independently determining when to shift from one program to one of higher priority to ensure cycle input dates and program completion dates are met. This variety necessitates a corresponding volume of procedures and instructions, which, due to unalterable production schedules, require the operators to conceptualize the format in which output is needed and to memorize the majority of procedures needed to capture data in the proper format. This meets the factor level description for, and is evaluated at, the GS-4 level.

**POSITION INFORMATION:**
This position is one grade level below the full working level and has potential for noncompetitive promotion to the next step in the career ladder to SPD #92183N.

Career ladder
92181 – 02
92182 – 03
92183 – 04

This supersedes all previously issued SPDs.

Bargaining Unit (BU), FLSA Nonexempt (N), Low Risk (LR), Competitive Level Code (0581)

Duties and Responsibilities Approved: 8/15/96

/s/ Jimmy L. Smith
Executive Officer for Service Center Operations

Classification Approved: 8/15/96

/s/ Eugenio Ochoa Sexton for
National Director, Personnel Division

