RECEIVED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SEP 1 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| Steven Ivey, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CA No. 07- 0748-RJL |
| V. | ) | |
| | ) | |
| HENRY PAULSON, Secretary, et al., | ) | |
| U.S. Department of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |

## PRELIMINARY REPORT /DISCOVERY SCHEDULE PURSUANT TO LCvr 16.3

### 1. Description of Case:

#### (a) Describe briefly the nature of this action:

Due to a flawed rating system by the IRS/US Treasury for performance of data transcribers, the plaintiff was subjected to inaccurate rating score for use in pay scale; length of employment, start and furlough; pay grade; incentive program; and for termination. The problems of the rating scale involved assembly chain processing faults and inappropriate/illegal activities of taxpayers' returns.

The use of applying the rating score resulting from the problems affected a majority of the data transcribers to some degree. For the plaintiff, a white male, the rating score was used for termination, where it was not used on other similarly situated females and blacks. Because of the faults in the rating system it was not a normal practice to terminate data transcribers for rating. In past administrative proceedings the defendant claims that it is a normal practice but did not provide sufficient support for justification. The defendant has contradicted itself in areas of the providing proof for rate scoring during the EEOC and MSPB administrative processing, nor has the defendant resolved the problems of the rating system, therefore not addressing that I was not performing well.

The NTEU was involved in combined actions with the IRS to prevent proper adjudication of the rating problems during the plaintiff's termination and affecting, subsequent, adjudications, with false records and testimony perpetuated by the IRS/Treasury.

1

**(b)  Summarize in the space provided below, the facts of this case.  The summary should not be argumentative nor recite evidence.**

1.  The plaintiff reported prohibited practices of altering taxpayers' returns; more specific to locations in SC, GA, and FL based on socioeconomic lines, which generated rating errors for the plaintiff.

2.  The targeting of two CPA firms in Hialeah, FL, with Hispanic clients for altering returns, resulting in errors charged to the plaintiff.

3.  The rating problems were part of the testimony of the witnesses in the Inspector General's file in March 2001; the Treasury EOP file 02-1135; and the MSPB hearing for December 2003.

4.  The use of illegal "time off" vouchers to cover up the mistakes of favored employees created delays in entering data because the plaintiff would have to make the corrections while logged into the program.  This resulted in significant rate reductions.

5.  There were not adjustments for any changes in the programs or for errors in instructions, no-fault errors, intentional alterations, or manuals.

6.  The online tax returns for filing meant that a batch of work went from 100 to 50, Doubling the work without rating adjustments. This generated reduced ratings or poor rating scores.

7.  The defendant has refused to make corrections to the rating system to reflect circumstances, (listed here and in the original complaint), beyond the scope of a data transcriber's responsibility.

8.  The mechanics of the plaintiff termination was the use of the faulty rating system, thus wrongful termination.

9.  At the time of the plaintiff's termination his rank was 397.  Given the fact that there were approximately 500 data transcribers, if the defendant is justified in its reasoning it would have had to terminate, at the same time, all transcribers below this numbers, 103. This did not happen.

10.  The NTEU was improperly involved in the termination of the plaintiff even after knowing of the incidences reported as EEOC and MSPB violations.

11.  The investigative files contains misleading and inaccurate information on undocumented records for termination, the EOP file and related investigations.

2

12. The defendant used a blank undocumented rating form in the Treasury EOP file for support of the plaintiff having a bad rating. This document is improper and misleading.

13. Even though the plaintiff contends that terminating a transcriber for rating was not normal practice, Cedric Swain testified for MSPB that he regularly terminated 50 transcribers per year. When compared to the list of 6 transcribers terminated for rating in the Treasury EOP file for a 3 year period, there is a contradiction. The defendant has not produced a list of 150 transcriber terminated for rating over the same three year period. However, since 50 per year has been the accepted number of transcribers terminated then there would be a larger number of employees affect by the determination of this case.

14. Robert Hall's testimony for EEOC, MSPB, and TIGTA files contradicted each other as being used to justify terminating the plaintiff.

15. Winda Daniel lied about the use of vouchers during her testimony for the MSPB.

16. The TEPS computer score is dependant on what any computer knows, what is input into such computer program. If the defendant is wrong in the data entered the resulting computer determinations will be wrong.

17. The contradictions in testimony and documents has produced conflicts in decisions of related cases 04-0214 and 05-1147 in DC District.

### (c) The legal issues to be tried are as follows:

1. The problems of the rating being overlooked by the defendant but having them applied to the plaintiff in a discriminatory manner and to other data transcribers, to various degrees, without corrective measures.

2. Credibility issues created from perjury and false records of the defendant, in that they relate to the claims, and harm to the plaintiff.

3. How the role of the improper rating scale affected the plaintiff for ranking in grade status, pay rate, incentive pay, and callback/furlough periods. Consequently, how the rating scale was applied for terminating the plaintiff, and administrative reviews.

4. The coercion of the plaintiff to improperly resign from employment by the defendant and the NTEU which concerns Fifth Amendment Rights, in defense of activities that resulted in rating and ranking scoring to the plaintiff and the total of the data transcribers.

5. The questionable practice of the defendant stating to employees that, "resigning is preferred so that it will not jeopardize future employment if they are to be terminated," when in fact it is not stated as such by the OPM.

3

6. Determine what the proper administrative remedy for the combined action of Paulson, et al., and the NTEU, et al. because conflict exist between that of the EEOC and the FLRA. After such determination to decide if the plaintiff was given proper notification of appeal rights.

   **(d) The cases listed below (include both style and action number) are:**

   (1) Pending Related Cases:

   No. 06-11909 , Ivey v. Paulson, Supreme Court

   CA No. 07-0480, Ivey v. Dept. Treasury,  DC District

   CA No. 06-2706, Ivey v. Paulson, N GA District

   No. 07-7083, Ivey v. NTEU, DC Circuit

   No. 06-5292, Ivey v. Paulson, DC Circuit

   (2) Previously Adjudicated Cases:

   CA No. 04-0214, Ivey v. Dept. of Treasury, DC District

   CA No. 05-0176,  Ivey v. OSC, DC District


**2. This case is complex because it possesses one (1) or more of the features listed below**
(please check):

| | | |
|---|---|---|
| \_\_\_\_\_ | (1) | Unusually large number of parties |
| \_\_\_\_\_ | (2) | Unusually large number of claims or defenses |
| \_\_\_\_\_ | (3) | Factual issues are exceptionally complex |
| \_\_\_\_\_ | (4) | Greater than normal volume of evidence |
| \_\_\_\_\_ | (5) | Extended discovery period is needed |
| \_\_X\_\_ | (6) | Problems locating or preserving evidence |
| \_\_X\_\_ | (7) | Pending parallel investigations or actions by government |
| \_\_\_\_\_ | (8) | Multiple use of experts |
| \_\_\_\_\_ | (9) | Need for discovery outside United States boundaries |
| \_\_\_\_\_ | (10) | Existence of highly technical issues and proof |

**3. Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiff: Steven Ivey -(pro se)

Defendant: Jeffery Taylor; Rudolph Contrerass; and Robin Meriweather- (DOJ)

**4. Jurisdiction:**

Is there any question regarding this court's jurisdiction?

__X__ yes        _____ no

If "yes" please attach a statement not to exceed one (1) page, explaining the jurisdiction objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.

**5. Parties to this Action:**

**(a) The following persons are necessary parties who have been joined:**

**(b) The following persons are improperly joined as parties:**

**(c) The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

**(d) The parties shall have a continuing duty to inform the court of any questions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

Through discovery more specific names and entities will be named because the rating inaccuracies affected a majority of data transcribers to some degree. Motions should further reveal those affected by the violations of this case.

The NTEU and specific representatives are a party to the claims as their involvement affected the plaintiff and perpetuated the negative harm to seeking relief.

5

**6. Amendment to the Pleadings:**

Amendment and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15. List separately any amendments to the pleadings which the parties anticipate will be necessary:

MOTION OF JOINDER OF PARTIES  AS PER  RULE 19;  and
MOTION TO AMEND AS PER RULE 15; both previous mailed September 8, 2007.


**7. Filing Times for Motions:**

All motions should be filed as soon as possible. Consideration to the Court's decision to a timeline should be reflective in the need to set appropriate deadlines, in respect to:
    (a) *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances.
    (b) *Summary Judgment Motions:*
    (c) *Other Limited Motions*: regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsiderations.


**8. Initial Disclosures:**

The parties are required to serve initial disclosures in accordance with
Fed. R. Civ. P. 26. If any party objects that initial disclosures are not appropriate state the party and basis for the party's objection.

Filed with this PRELIMINARY REPORT.


**9. Request for Scheduling Conference:**

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and position of each party.

    Plaintiff-No


**10.  Discovery Period:**

The discovery period commences thirty (30) days after the appearances of the first defendant by answer to the complaint.

6

Cases in this court are assigned to one of the following three (3) discovery tracks: (a) zero (0)-months discovery period, (b) four (4)-months discovery period, and (c) eight (8)-months discovery period.

**(a)** Please state below the subjects on which discovery may be named.

1.        The documents associated with this case; personnel records, departmental manuals, notes/records of the plaintiff, and as of yet unreleased department documentations held by the defendant. Statistical data formulated from the information and documentations.

2.        The following individuals need to be questioned and/or deposed for information relative to this case and needed/considered for potential witnesses: Brent Brown, Human Resources; Pam Blackburn, supervisor; Linda Ferguson, supervisor; Robert Hall;    Judy Jordan;  Winda Daniel & Joyce Holmes, (and names associated with this unit); Lisa Lee and Regina Mayfield, (unit manager) ; Kelly Mancle  (and names associated with this unit); a representative assigned to answer question about the program statistics; Nancy Dunford, EOP investigator; Kathleen Bushnell, TIGTA investigator; Cedric Swain, Human Resources; Betty Burris, Human Resources; Bettye Reid , and  other personnel designated to answer division question such as Code & Edit, Programs, and Corrections.

          For the NTEU the following individual would need to be questioned, Doug Van Buren, Lisa Porter, and Angela Strong.

*(There will be other individuals as their full names become available through the gathering of information and as documentation becomes available, for this a related cases. )*

**(b)**   If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

          As based on prior negotiations and request for information attention to the Treasury/Defendant to sabotage the retrieval of information, documents, and witnesses is necessary. The court should be aware of such so that adjustments be advisable in the event that requested information be hindered by the defendant.  The question as to whether extended time for discovery be set now or be extended  for particular instances may be better decided by the Court considering the Court's decisions on Motion of Joinder, Motion to Amend, and, subsequent, Motions to Compel, as needed. An <u>eight month</u> discovery would be initially requested by the plaintiff.

7

**11. Discovery Limitation:**

What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rule of this Court, and what other limitations should be imposed.

In the event that a limitation be made to the gathering of information by the defendant, the plaintiff request the Court to be advised of such and make remedy to resolve the discovery request that is beneficial rather than truncate the discovery request. This would prevent any excessive request to produce and compel discovery. In consideration of such rules it should be noted that much, if not all, the request to be made are realistic and within the possession of the defendant.

**12. Other Orders:**

What other orders do the parties think that the Court should enter:

Fed. R. Civ. P. Rule 16 (c) (7)- identifying witnesses and documents; exchanging pre-trial briefs.

Fed. R. Civ. P. Rule 26 ( c) (2)- method, time and place of discovery.

**13. Settlement Potential:**

(a) Lead counsel for the parties certify by their signatures below that they conducted a conference that was held on ____September 10_____ , 20 _07___ , and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.

For plaintiff: Lead counsel (signature): _____

Other participants:_____

_____

For defendant: Lead counsel (signature):_____

Other participants:_____

_____

8

**(b)** All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(____) A possibility of settlement before discovery.
(____) A possibility of settlement after discovery.
(____) A possibility of settlement, but a conference with the judge is needed.
(_X_) No possibility of settlement.

**(c)** Counsel (____) do or (_X_) do not intend to hold additional settlement conferences among themselves prior to the discovery. The proposed date of the next settlement conference is _____ , 20 _____ .

**(d)** The following specific problems have created a hindrance to settlement of this case.

The issue of the defendant with participating in "good faith" has been an underlining problem in settlement in administrative proceedings. The were also hindrances from the lack of proper investigations, attempts to use negotiations as a means of intimidation, and absence of recognition of any problems. Thus, the negotiation orders as prescribed before MSPB and EEOC were not followed by the defendant so as to resolve any issues. Additionally, the issues as they relate, to a larger portion of the data transcribers, and to the NTEU, would need to be considered. (From attachment #1 can be seen the initial letter. August 29, 2007, for conference sent to the defendant, additionally, a conference was made on September 10, 2007.)

## 14. Trail by Magistrate Judge:

(a) The parties (____) do consent to having this case tried before a magistrate judge of this court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ day _____, of 20 _____ .

(b) The parties (_X_) do not consent to having this case tried before a magistrate judge of this court.

Submitted this _12th_ day of _September_ , 20_07_

\_\_\_\_\_Steven Ivey (pro se)_____
Counsel of Plaintiff

_____
Counsel for Defendant

_9-12-07_
Date

Steven Ivey, Plaintiff

9

**STATEMENT OF JURISDICTION : as per Question # 4**

Jurisdiction is initially for the DC District because circumstances of related cases have been filed in DC District, therefore, there is already a working knowledge of the plaintiff's claims. This would aid in judicial efficiency. Particularly, the circumstances of false records and associated testimony was perpetuated in DC District. Thus, DC District can have subject matter jurisdiction over the actions of the defendant, and, if amended, the NTEU. If co-defendants then both are headquartered in the DC District making review more efficient.

However, given the resulting determination of claims, through the amended defendant and claims, and/ or initial filings, there would be an issue of North Carolina as proper jurisdiction. This would apply to part of the complaint. Similarly, it would be reasonable to factor into this determination that the defendant, Paulson, et al., would request proper venue as N. GA. District.

Because there is an issues as to proper administrative review, the EEOC or the FLRA, DC District may serve as a more significant jurisdiction because these two administrative agencies are in DC District. Final determinations of any discrepancies are decide in their headquarters in DC District.

DC District can serve as a neutral Court, because to date there would be no clear jurisdiction without splitting or limiting adjudication and fairness to parties. However, resolve can be made with concessions having been determined under directive of the Court.

## SCHEDULING ORDER

       Upon review of the information contained in the (Joint) Preliminary Report and Discovery Plan form completed and filed by the parties, the court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court except as herein modified.

_____

_____

_____

IT IS SO ORDERED, this _____ day of _____ , 20 _____ .


_____
UNITED STATES DISTRICT JUDGE

11

## Certification of Service

The attached document was sent by mail to:


Office of the Clerk
US District Court for DC
333 Constitution Ave, N.W.
Washington, DC, 20001

And by regular mail to:

Jeffery Taylor
Department of the Justice
555 Fourth St., NW
Washington, DC, 20530




$9\text{-}12\text{-}07$
_____
Date

_____
Steven Ivey
Plaintiff

Steven Ivey
7611 S. OBT, # 278
Orlando, FL, 32809

Jeffery Taylor
Department of the Justice
555 Fourth St., NW
Washington, DC, 20530
202.514.7198

AUG 29, 2007

CA No. 07-0748 : **Duty to Confer per LR 16.3**

Dear Jeffery Taylor/DOJ,

      Enclosed is the initial Preliminary Report as sent to you on July 17, 2007. Acording to **LR 16.3** for a Duty to Confer, this initial report will need to be adjusted to reflect changes, if any, from the conference.

      **Under 16.3 (c ) (5)** there is raised the issues of whether the case could benefit through the Court's ADR.  In order for this to have any potential  Paulson/Treasury would need  initially, (1) to concede that the issues as listed affected the rating of a data transcriber, or which ones and to what degree; (2) that documents requested, be produced, such as missing affidavits, training materials; and (3)  proper explanation of statistics of the rating scoring, program maintenance, updates, when done, etc.

      (i ) Since in the past with any administrative and civil action the defendant as not participated contructively, Paulson/Treasury would need to demonstrate positive co-operation so that ADR could have any benefit;

      (ii) once you receive this, a call can be made, to conference or set a time for such;

1

*Attachment #1*

(iii) until some constructive effort is made in the production of rating determinations, this includes the asknowledgement of the issues of perjury by witnesses, and false records, relating to the rating system, ADR would not be constructive;

(aa) since it may take further discovery and resolve through discovery for documents and depositions, particularly since there is contradictory testimonies, ADR would have more potential after discovery;

(bb) if the Court can answer legal issues and questions, thus resolving key legal issues then ADR may help to expedite judicial efficiency;

(iv) a neutral evaluation of the case would help direct the case for more accurate reslove, depending on when it is done; if discovery is more co-operative then after discovery;

(v) it would be more cost effective if the defendant participates in discovery fully, if so, then there can be concessions made that aid effiency of resolve.

Preparation for a conference/meeting would be more beneficial if you would review the initail Preliminary Report and edit it as needed, then mail it to me. This should be done with enough time for me to review your changes before the conference, due September 10, 2007.

There are details that may need to be examined or more formal report completed, therefore, I can be reached at the above address and phone number. Otherwise, I will make any additional adjustments to the initial preliminary report to be sent in September 17, 2007.

Sincerely,


Steven Ivey

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Steven Ivey,                                )
                                            )
      Plaintiff,                       )
                                            )
                                            )    CA No. 07- 0748
      V.                                )
                                            )
HENRY PAULSON, Secretary, et al.,           )
U.S. Department of the Treasury,            )
                                            )
      Defendant.                       )

## PLAINTIFF'S INITIAL DISCLOSURE PER FED. R. CIV. P. 26

**1.** State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.

      The flaws in the rating system of the defendants were used to discriminate against the plaintiff in the areas of ratting /rank scoring; recall/furlough scheduling; incentive pay; and pay scale/grade. The collective errors in the rating/rank system were then used to discredit the plaintiff as negative job performance and to improperly terminate the plaintiff, for the benefit of the defendant.

      The perpetuation of the flawed rating system was done by, (1) the failure of the defendants to recognize (a) the problems in data entry; (b) program inaccuracies; ( c) improper employee behavior; (d) illegal activity; {etc. (as listed in complaint)}; (2) advising the plaintiff to resign which is not in accordance with OPM regulations; and (3) negatively impacting the administrative and judicial review of related issues for the plaintiff, similarly situated employees.

      Preliminarily, the legal issues are the discrimination claims of the plaintiff involved in the rating and ranking determinations of the defendant. The flawed scoring system did not compensate data transcribers for no-fault errors being attributed to them, thus, depending on exposure to such errors there would be related ratio of errors charged to the data transcriber. Charged errors included improper activity as reported in related MSPB review. The NTEU participated in the perpetuation of the flawed rating system, contradictory to its intended mission of assisting the plaintiff, and other data transcribers in corrective monitoring, and false records as supported by the IRS/Treasury.

1

Additionally, the legal issues would be, (1) to determine what administrative agency is or has jurisdiction over the combined actions of Paulson, et al., and the NTEU, et al., the EEOC, FLRA. There has been conflict surrounding proper jurisdiction such combined actions; and (2) to determine whether the NTEU and/or the IRS/Treasury was to have informed the plaintiff of the FLRA appeals rights if the FLRA is to be the exclusive remedy to the participation of the NTEU.

**2.** Describe in detail all statutes, codes, regulations, legal principles, standards, or usages, and illustrative case law which plaintiff contends are applicable to this case.

A. Statutes:

1. Title VII of Civil Rights of 1964;  Civil Rights Reform Act of 1978.

2. 5 USCS § 2302; 5 USCS § 4302 (4303)- Performance Appraisal Plan;
   5 USCS § 7513- Efficiency of Federal Service.

3. 18 USCS § 1513- Retaliating Against an Informant.

4. 42 USC §§ 2000 et seq.,  42 USCS § 1981,  42 USCS § 1983,  42 USCS § 1986,
   42 USCS § 1988.

5. Restructuring and Reform Act of 1998.

B. Regulations:

6. NTEU Regulations.

7. OPM regulations.

8. IRS/Treasury regulations.

C. Cases:

1. Ashton v Civiletti , (1979, App DC) 198 US App DC 190, 613 F2d 923, 20 BNA FEP
   Cas 1601, 21 CCH EPD  30397.

2. Beeson v. Hudson, (1980, CA 8 Ark0 630, F 2d 622.

3. Burlington Industries, Inc v. Ellerth , 118 S. Ct. 2257 (1998).

4. Cheney v Department of Justice , (1983, CA FC) 729 F 2d 1280.

2

5. <u>Eibel v Department of the Navy</u> , (1988, CA FC) 857 F 2d, 1439.

6. <u>Faragher v. City of Boca Raton</u> , 118 S. Ct. 2275 (1998).

7. <u>Fisher v. Dept. of Defense</u>  (4/12/91) 47 MSPR 585.

8. <u>Hoover v U. S.</u>  , (1975) 206 Ct Cl 640, 513 F 2d 603.

9. <u>Katcher v Gray</u> , (1952) 01 US App DC 266, 199 F 2d 783.

10. <u>Phillips v Bergland</u> , (1978 CAA W Va) 586 F 2d 1007;  (5 USCS 7513 n12).

11. <u>Shuman v Department of the Treasury</u> , (10/22/84 MSPB )
    Docket No.  SE o4328410073.

12. <u>Stone v. FDIC</u> ,(1999 CA FC ) 179 F3d 1368.

13. <u>Thompson v U.S. Postal Service</u> , (1984, WD Va) 596 F Supp 628, 36 BNA FEP
    Cas 1382.

14. <u>Weirauch v Department of the Army</u> , (1986, CA FC) 782 F 2d 1560.


**3.**  Provide the name and if, known, the address and telephone number of each individual
likely to have discoverable information that plaintiff may use to support claims or
defenses, unless solely for impeachment, identifying the subjects of the information.

A. The following managers and processing personnel from the IRS/Treasury initially
these individuals were at the IRS Processing Center, 4800 Buford Hwy., Chamblee, GA.
These witnesses have provided testimony in the past for rating issues and residual effects.
The program procedures and application;  resignation processing.  Those marked as " * "
have testimony leading to impeachment.

1. Winda Daniel, unit manager,  (and names associated with this unit). *

2. Joyce Holmes, lead.

3. Linda Ferguson, supervisor.

4. Judy Jordan, supervisor.

5. Pam Blackburn, unit manager. *

3

6. Robert Hall, supervisor. *

7. Cedric Swain, human resources. *

8. Brent Brown, supervisor.

9. Betty Burris, human resources.

10. Lisa Lee, unit manager, (and names associated with this unit). *

11. Regina Mayfield, lead.

12. Kelly Mancle, unit manager, (and names associated with this unit). *

13. Bettye Reid, human resources.

14. Designated personnel from Program Processing; (a) Code and Edit, (b) Corrections Division, and ( c) Payroll.

15. A number of data transcribers that were terminated during the period starting with 1999 to the present based on Cedric Swain's testimony that he terminated 50 data transcribers per year for poor rating.

B. The following NTEU representatives at the IRS Processing Center, 4800 Buford Hwy., Chamblee, GA., contributed the rating, rank, improper involvement, and perjury issues as perpetuated by the defendant and the NTEU.

16. Doug Van Buren

17. Lisa Porter

18. Angela Strong

C. Investigative Personnel at the addresses indicated at the time of their participation.

19. Kathleen Bushnell; TIGTA, Research & Perfection Branch, Submission Processing Post Processing Division W:CAS:SP:AT, 1111 Constitution Ave. NW, Washington, DC, 20224; Ph: 678-530-5301. To verify compilation of TIGTA file and discrepancies resulting from the testimonies and filing dates.

20. Nancy Dunford; Treasury EOP, 800 K Street, NW, Ste. 640, Washington, DC, 20001, 804-266-6021. The answer procedure questions and discrepancies of the EOP file.

4

21. Esparanza Balahadran; Tax Commissioner's Office, 1500 Pennsylvania Ave, NW, Washington, DC, 20220. For purposes of proper procedure in the Tax Commissioner's Office and related Treasury procedure when complaints are sent to the Commissioner as per regulations.

*(There is a potential of other individuals as their full names become available through the gathering of information and as documentation becomes available.)*

**4.** Provide the names of any person who may be used at trail to present evidences under Rule 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Federal Rules of Civil Procedure 26 (a) (2) (B). Provide a separate written report satisfying the provisions of that rule. Attach expert witness list and written reports to initial Disclosures as Attachment B.)

*Plaintiff reserves the right to amend expert and notify defendant as required.*

**5.** Provide a copy of, or a description by category and location of, all documents, data compilations, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and description to Initial Disclosures as Attachment C.)

The documents associated with this case are; personnel records, departmental manuals, notes/records of the plaintiff. Statistical data formulated from the information and documentations. See Attachment C for list.

**6.** In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed,R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)

See Attachment D.

**7.** Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part of

5

a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)

Not applicable.

**8**. Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action in plaintiff's cause of action and state the basis and extent of such interest.

The approximately 500 data transcribers at the IRS processing center, because the rating system in question is for data transcribers, thus, depending on the degree of exposure to rating problems. For some problems all transcribers would be affected; to other problems some transcribers would be affected specifically.


_9-12-07_
Date

_Steven Ivey_
Plaintiff

Steven Ivey
7611 S. OBT, #278
Orlando, FL, 32809

6

# ATTACHMENT C

List of relevant documents presently known to the plaintiff:

1. Original Compliant letters of the Plaintiff- dated November 1999 and November 2000 which have been provided to the defendant, also included in the EOP file 02-1135.

2. EOP Investigation File, 02-1135-defendant has a copy.

3. Interrogatories of Steven Ivey for EOP file 02-1135.

4. TIGTA file compiled March 2001.

5. Interrogatories of Steven Ivey for TIGTA file.

6. MSPB- Interrogatories, correspondences, and Hearing Transcripts for the MSPB administrative processing, which the defendant has a copies.

7. NTEU Manual during the 1999-2002 tax seasons. (Plaintiff has part of these.)

8. Tax Restructuring Plan and scheduling of changes from 1999 to 2002.

9. OPM regulations and requirements for performance standards and termination and the related correspondences regarding employment regulations.

10. Related case proceedings and associated documentation.

i

# ATTACHMENT D

1. The plaintiff is requesting back pay, benefits, and cost of administrative/civil action at $20,000 per year plus interest since his termination as a result of rating faults that contributed to questionable performance ratings and subsequent discrimination and termination.

2. The itemization of cost with receipts and fees detailed can/will be provided as needed for the cost of processing the claim and maintaining.

3. In addition, for settlement purposes the plaintiff is requesting compensatory damages of $300,000 per incident; however for jury trial the plaintiff would then make the amount an issues to be decided by jury. It is a condition of such jury trial that the jury not be told of any restrictions of damage amounts.

4. Pecuniary and non-pecuniary damages are to include the damages that are the resulting effect of violations such as damage to the plaintiff's reputation; moving and adjustment cost; the offset cost of interference to the plaintiff's career as previously planned; and related cost as settlement issues continue to be adjusted and amended.

5. All the above affected from: (a) change in work habits, (b) moving, ( c) mental distress, (d) probability of returning to federal employment, (d) previous school plans, (e) collateral loss of income; starting business, related dependency cost, processing claims effects, and (f) relationship to other parties and witnesses.

*( It should be noted that the above can adjusted to reflect any minuses of any overlapping cost from any related cases in the event they would be finalized, therefore, settlement is negotiable.)*

ii

**Certification of Service**

The attached document was sent by mail to:


Office of the Clerk
US District Court for DC
333 Constitution Ave, N.W.
Washington, DC, 20001

And by regular mail to:

Jeffery Taylor
Department of the Justice
555 Fourth St., NW
Washington, DC, 20530


9-12-07
_____
Date

Steven Ivey
Plaintiff