**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**RECEIVED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Steven Ivey,                                )
                                            )
         Plaintiff,                         )
                                            )          CA No. 07- 0748
    V.                                      )
                                            )
HENRY PAULSON, Secretary, et al.,           )
U.S. Department of the Treasury,            )
                                            )
         Defendant.                         )

### PLAINTIFF'S REPLY TO DEFENDANT'S OCTOBER 3, 2007, OPPOSITION FOR REASSIGNMENT AND JOINDER

*(Unless otherwise listed at the end of this 'Reply Motion' attached to this motion, all referenced attachments refer to previous filings for the present case. The sectioned page divisions below relate to the defendant's 'Opposition Motion.')*

**Introduction:**

From the preliminary report question #5 (d) the Court advises the parties to inform the Court when there are issues of joinder of parties relative to the present civil action. As previously filed, the plaintiff is requesting a joinder of parties, the NTEU, et al. The plaintiff with this reply to the defendant's 'Opposition Motion to Plaintiff's Reassign Judge and Joinder,' has include a 'Motion of Joinder' for the approximately 500 data transcribers to be additional plaintiffs who would be affected by the determinations of the present case.

From the defendant's answer to the plaintiff's complaint, dated June 29, 2007, there was generated a conflict of the facts and testimonies of witnesses, particularly, surrounding attachment # 4. Neither the defendant nor the Nation Treasury

1

Employees Union, (NTEU), have taken responsibility for the hate speech used in the commission of hate crimes. Circumstances such as this have contributed to defrauding the Court in prior litigation of the plaintiff in related claims, because it involves lies and false records.

### I. Response to the Defendant's Background-Page 2:

**Page 2, ¶ 1** : As the defendant has stated in related cases, it has persisted in making arguments that the plaintiff's claims they "confusing and difficult understand." This represents attempts to create distractions and to under-mind justice, thus, in turn to prevent adjudication of the plaintiff's claims. This is similar to the defendant's claim, with the preliminary report, that the plaintiff was uncooperative, P. 1, ¶ 1, in collaborating to complete the preliminary report. However, this is not true. The plaintiff called the defendant repeatedly, allowed enough time to respond, but the defendant did not reply sufficiently. The plaintiff mailed his preliminary report so that it would arrive for the due date. In this action there is an attempt to shift blame to the plaintiff and in order for the defendant to exercise "instant credibility," therefore, to mislead the Court. This follows similarly, for the defendant's comments of the plaintiff's claims as filed.

**Page 2, ¶ 2**: The defendant's assessment of the plaintiff's prior and existing litigation \was/is not specifically generated by discrimination as stated by the defendant. The defendant, therefore, has not differentiated between other cases and the present case. In referencing case, <u>Ivey v. NTEU</u> , 2007 WL 915229 (D. DC Mar.27, 2007), the defendant did not fully describe why the case was dismissed. One specific reason cited for

dismissal was that the FLRA is the specific administrative remedy for claims against the NTEU and the plaintiff did not seek such remedy.

## II. Response to Defendant's Argument to Reassign Judge- Page 3- 5 :

**Page 3, ¶ 1:**   Judge Sullivan during the May 20, 2004 hearing for related case <u>Ivey v. Dept. of the Treasury</u>, 04-0214 DC District,  asked the plaintiff if he had an attorney, and the potential of the plaintiff to hire an attorney for the case.  The plaintiff replied that effectively since the plaintiff would have to review all documents for accuracy and truthfulness, then it would be best at such point to continue without an attorney. Considering that attachment # 4 of the complaint is a forged document containing unverified racially charged accusation as described in related case 04-0214, why did Judge Sullivan not determine that such a document was a violation of the Privacy Act? The document contains hate speech in the commission of hate crimes.  Would an attorney handling the case have resulted in a different decision from  Judge Sullivan, thus, giving more credibility of the plaintiff's claim that attachment # 4 is a violation pf the Privacy Act?  If so, then why did the plaintiff stating such criteria of attachment # 4 not be sufficient ?   Would an attorney have made a difference to the truth of attachment # 4 ? Did Judge Sullivan use the instant credibility of the defendant /DOJ in making the decision of attachment # 4, therefore, not properly weighing in on the plaintiff's argument ?  This circumstance, in addition, to the plaintiff's previous reasoning in the initial request for reassignment, questions Judge Sullivan's  impartiality.  Since the plaintiff has filed a misconduct charges against Judge Sullivan in relation to such issues,

3

it would serve the interest of justice and fairness to all parties if the case was reassigned
to another judge.

**Page 3, ¶ 2:**    Summarily to the plaintiff's accusations of Judge Sullivan's conduct a
reasonable observer would not have a clear view of impartiality considering that
attachment # 4 was used in related case <u>Ivey v. NTEU</u>, 05-1147, DC District, in which
Judge  Sullivan did not recognize how improperly the NTEU initiated attachment # 4.
This document is now part of the claims for the present case. Therefore, since Judge
Sullivan has created conflict surrounding adjudication of attachment # 4, there is
reasonable questioning as to such conflict being perpetuated in the present case.


**III. Response to  Defendant's Opposition to Joinder of the NTEU- Pages 5- 7:**

**Page 5, ¶ 2:**    For the provisions argued by the defendant for Rule 19 joinder, at (1)
considering the "absence of the party for complete relief...," the defendant is ignoring
the circumstance with attachment # 4, in that neither the defendant and the requested
joinder, the NTEU, have resolved the forged evidence of such a document or the related
perjury. From the plaintiff's originating complaint can be seen the line-by-line analysis of
attachment # 4, in which the NTEU participated, however, in related case <u>Ivey v. NTEU</u> ,
05-1147, DC District, the NTEU  has denied any involvement.  This practice is similar as
in attachment # 3, with NTEU representative Doug Van Buren, during the defendant's
process of terminating the plaintiff.  Consequently, the defendant for the present case has
denied that it falsely forged attachment # 4, which in turn points back to the NTEU.
Thus, there remains an unresolved contradiction of testimonies and denials that affects
the present case. Just as Doug Van Buren's ex parte communications improperly

4

contributed to the termination of the plaintiff and the two NTEU representatives of attachment # 4, Lisa Porter and Angela Strong, contributed to creating false racial hate speech towards the plaintiff in order to protect the NTEU from Doug Van Buren's prior March 5, 2001 participation in improperly encouraging the plaintiff to sign away his Rights and claims as reported, attachment # 2. It should be further noted that, "allegations of wrongful dissemination of information harmful to reputation of former governmental employee combined with denial of re-employment in government job states compensable due process violation;" Bastel v. Federal Aviation Administration (1984, App DC 223 US App DC 297, 725 F 2d 1403). These combined actions with the IRS/Treasury were to prevent the adjudication of the problems with the rating and ranking system used to evaluate data transcribers. The question to ask with attachment # 4, is why would Robert Hall use two NTEU representatives to tell a lie, when both could easily dispute him, giving them more credibility of two against one, if it was not in fact these two who used Robert Hall as a "patsy" ? This type of "gang" effect is a pattern of behavior for the defendant, so as to rely on grouped instant credibility to perpetuate wrong-doing of specific individuals.

The absence of the NTEU to file charges against the IRS/Treasury for the improper involvement of Lisa Porter and Angela Strong is suspicious, but further, demonstrates the failure of the NTEU in its mission of assisting in the protection of data transcribers, as the plaintiff has contended for affecting the rating and ranking evaluations. The NTEU interfered with the plaintiff exercising the duties of the job, (as data transcriber described in attachment # 7 of the amended complaint), and the

5

perpetuation of the IRS/Treasury's denial of problems with the rating system.  Thus, the NTEU is relative to the claims for the present case.

**Page 6, ¶ 2:**  For criteria (2), the NTEU acted intentionally in its participation with the defendant.  Those combined actions are contradictory to the presence and the mission of the NTEU.  What the defendant has not done in referencing related case Ivey v. NTEU , 05-1147, DC District, is to resolve the NTEU of defrauding the Court with its participation in what the NTEU has denied in attachment # 4, and with the defendant's answers for the present case for denial.  The NTEU, simply denying any such involvement is not grounds to justify exclusion of its actions, particularly involving racially motivated hate speech perpetuated on the plaintiff.  Therefore, the NTEU has an interest to the present case.

**Page 6, ¶ 3:**  The requirements as stipulated for joinder is satisfied from the above in that it can be seen that there are common facts to both the defendant and the NTEU that have risen as part of the factors affecting the rating and ranking system.  The NTEU did not act in a traditional manner when in review of the plaintiff's originating complaints and defense of his Rights and others.  If the NTEU is present at the IRS processing center then why has it refused to address the problems of the rating system for approximately 500 data transcribers, and even it's own representatives involved in residual effect to the plaintiff, attachment # 4.  The defendant has not sufficiently, resolved the use of the NTEU in the removal of the plaintiff when the NTEU has no such bargaining right in the plaintiff's removal from employment under the circumstances of "rating," attachment # 1.  The improper encouraging of the NTEU representative, Doug Van Buren, attachment # 2,

for the plaintiff to sign a false document not only is a violation of the plaintiff's Fifth

Amendment Rights, it is contributing to the failure in the proper resolve of the rating

problems. The use of the NTEU is a smoke screen so as to deflect attention away from

the plaintiff's complaints, part of which is the problems of the rating system, or those

issues that had resulting affects to the rating system; listed in the original complaint. The

fault of the NTEU is allowing it's own improper use, therefore, a combined action against

the plaintiff, and the other approximately 500 data transcribers. The plaintiff has

included, with this opposition reply, a Motion of Joinder for the other data transcribers as

plaintiffs, because the combined effects of the defendant and the NTEU to the claims

have affected them as well. The NTEU with the assistance of the defendant has

attempted to insulate itself from any fault in any administrative and judicial proceedings.

More significantly, to the present case is, why is the IRS, US Treasury, and the NTEU,

committed and spread hate speech and hate crimes, when it should have been spending

the time identifying and correcting the problems with the rating and ranking system for

data transcribers ?

      The approximately 500 data transcribers were the catch all to the IRS

system. They were required to fix and resolve all the mistakes prior to entering a tax

return into program systems before most the agency can retrieve such documentation for

whatever the purpose. For the IRS/Treasury to ignore the problems in evaluating the

rating and ranking system is to ignore their role through their work. Similarly, the

IRS/Treasury, and the NTEU, have failed to correct such problems but instead have

chosen to perpetuate misconduct and illegal activities. What this points to is that the trust

7

placed into these entities has been violated for the purposes of escaping justice and more specifically, to harm the plaintiff to void any claims to resolve the violations for all. The general characteristic of the rating and rank system is "garbage in, garbage out."

**Page 7, ¶ 2:**    Beginning on page 7 running through till the conclusion, page 11, of the defendant's Opposition Motion is the issue of prior adjudication of related cases, in that they result in repeated claims, thus protected by res judicata and collateral estoppel. However, the defendant does not specifically state the issues of the other cases, including that with the NTEU, in order to distinguish similarities and differences between the present case. The defendant simply states that the present case and the others are the same, because they involve the same litigants; which is not accurate but a simple surface analysis. The defendant's discussion of any prior litigation fails to resolve the lies and false records entailed in the claims, and how such circumstances relate to the claims of perjury, forged evidence, and the subornation of such acts by both the defendant and the NTEU, through underline combined actions. The defendant did not resolve the contradiction between the denials of the NTEU and itself with attachment # 4, and how it resolves credibility issues, because as with attachment # 4, there are other unresolved false record keeping and lies. Most significant is the initiation and perpetuate of hate speech and hate crimes for the purpose of defrauding adjudication.

        The defendant's assessment of the particulars of prior case Ivey v. NTEU , 05-1147, DC District, is inaccurate. One determinates for dismissing the case was that the Fair Labor Relations Authority, (FLRA), has "exclusive remedy" over claims against the NTEU to which the plaintiff had not notified, thus, it was cited that administrative

remedies were not exhausted. The defendant's Exhibit 1, is not the 'Memorandum of Law' associated with this case but the order. However, the plaintiff has, subsequently, filed a complaint with the FLRA, who in turn did not confirm the circumstances of the FLRA to the claims as being the "exclusive remedy, " neither, particularly, with the issue of jurisdiction over the combined actions of the NTEU with the IRS/Treasury; nor, for the NTEU's actions against the plaintiff when the plaintiff was a private citizen of North Carolina, after employment with the defendant. Both the defendant and the NTEU participated in these unresolved actions; meaning unresolved credibility issues, and the resulting defrauding effect to the Courts.

The questions raised from the present case and the related case Ivey v. NTEU, as a result of the FLRA 's review are, (1) should the NTEU have been required to notify Ivey of the administrative remedy of the FLRA, when the NTEU has participated in personnel actions as discussed in the complaints; (2) if the NTEU is not required to inform Ivey of the FLRA administrative remedy, then should it have been the IRS/Treasury; (3) was the failure of the IRS/Treasury and/or the NTEU to notify Ivey of the FLRA administrative remedy intentional, so as to prevent proper adjudication; (4) with parts of the two complaints that concern the combined actions of the IRS/Treasury and the NTEU, which administrative remedy has authority over the combined actions, the EEOC, MSPB, or FLRA; and (5) whether the proper jurisdiction of the actions of the two NTEU representatives in attachment # 4 occurring to the plaintiff after employment with the IRS/Treasury while a private resident of NC, is that of the FLRA ? The resolve to these questions is involved with the present case, making the joinder and amending of the

9

circumstances of the NTEU relative to the facts for the defendant as well as the NTEU, because each acted as partner, rather than independent.

Because there is now issues of the perjury and forging of evidence with attachment # 4, and other documentation, that have arisen when the denials of the defendant occurred for the present case as compared to the denials of related referenced case Ivey v. NTEU , 05-1147, DC District, the defendant has not demonstrated that denial of joinder and amending the present case is proper. To further, the plaintiff could not have raised such circumstances with the initial filings of the other cases referenced prior to the conflict being created with this present case and related case Ivey v. NTEU . Additionally, the defendant did not resolve in its 'Opposition Motion' the means by which the under-minding of any previous filed claims generating the defrauding of the Courts, affects prior litigation, because of the perjury, forging evidence, and subornation of these actions as created by the combined actions of the defendant and the NTEU, would now cast a shadow over any previous litigation. This would mean that the actions of the defendant and the NTEU for previous cases would be in question for intentionally concealing evidence, perpetuating lies, and misleading adjudication with intentional malice towards the plaintiff.

For all combined actions there has not been established a definitive administrative remedy. The most recent administrative review of the FLRA did not establish itself as the "exclusive remedy" of the combined actions of the defendant and the NTEU. This was not established under the EEOC or the OSC/MSPB as proper jurisdiction for both the defendant and the NTEU. Thus, the FLRA does not have

10

exclusive remedy over what could be EEOC or MSPB jurisdiction. This is of particular importance for the plaintiff's Fifth Amendment claims because the combined actions of the defendant and the NTEU generated the violation that continued even after the plaintiff was employed with the defendant. The combined actions have not been fully adjudicated in any previous litigation because both parties have not been joined, thus, a resulting conflict of proper administrative remedy and judicial determinations. The defendant has not resolved these circumstances, therefore, the joinder and amending are not situations of res judicata or collateral estoppel.

From the defendant's intentions to request dismissal, page 6, footnote 2, it should be noted that in order for the defendant to gain a dismissal of the claims of Fifth Amendment the issues surrounding the combined  actions with the NTEU would have to be resolved before it could be granted a motion to dismiss as per the defendant citing James Madison Ltd. v. Ludwig , 82 F. 3d 1085, 1099 (DC Cir. 1996), page 7, ¶ 3.  In anticipation of a Motion for Dismissal the defendant would  cite Bivens Tort; Bivens v. Six Unknown Named Agents: Fed. Bureau of Narcotics , 403 US 388, 91 S. Ct. 1999, 29 L ED 2d 619 (1971), as defense against Fifth Amendment claims because of the defendant claiming sovereign immunity.  However, this would not apply to the combined actions with the NTEU.  The defendant can not grant sovereign immunity to the NTEU for resolve of Fifth Amendment  claims because the NTEU is a private entity, not a governmental agency.  The defendant would have to show justifiable resolve of it's partnership with the NTEU against the plaintiff.  In any other proceedings this has not been resolved or could have until both the defendant and the NTEU together have resolve

11

serious issues of hate speech and hate crimes. Thus, the combined actions of the

defendant and the NTEU is not Bivens Tort, otherwise the defendant would be using

Bivens to avoid accountability for criminal actions.   The NTEU has relied on unresolved

lies to escape accountability. These facts, in conjunction with the interference cited as in

Bastel v. Federal Aviation Administration (1984, App DC 223 US App DC 297, 725 F 2d

1403) from above, demonstrates that the defendant would have to resolve the underlining

issues of lies and forged evidence before its 'Opposition Motion' to amending and joinder

could be granted because such circumstances would in turn defeat a motion for dismissal.

Additionally, because when [motion] to deny Bivens action, is not barred by qualified

immunity, the  bad faith interference with witnesses compromising [plaintiff's] due

process right to present witnesses, as with attachment # 4, means suit is not barred by

res judicata, judicial estoppel, or statutes of limitations; Heller v. Plane , LS, et al, (1990,

DC FL) 66 AFTR  2d 90-5746  F  Supp 1553.  This later circumstance can now, through

recent evidentiary statements of the present case compared to related case Ivey v. NTEU,

be applied to previous litigation to demonstrate that proper adjudication was not done nor

could the plaintiff had raised such perjury issues of the present case.

      The plaintiff could have not raised the issues of the denials of the present

case with the related case Ivey v. NTEU or the other related case until the defendant and

the NTEU had weighed in on attachment # 4, now resulting in the conflicting cases

surrounding the same evidence from lies. Otherwise, if what the defendant claims in that

the plaintiff had raised such issues before, then the Court would have know about the lies

and forged evidence surrounding hate speech, thus, hate crimes, and still granted

dismissal properly ?  Is the defendant implying that this circumstance occurred ?

In no other proceedings does the defendant resolve the problem with the rating and ranking system.  The defendant has chosen to intentionally fail to investigate the listed problems of the rating and rank system as listed in the originating complaint.  Because the plaintiff's employee ID number would be attached to all documents he processed and entered into the IRS programs, those documents could be checked to reveal the listed problems.  More significantly, the defendant could challenge the validity of the listed rating problems, and, in turn, reveal if the plaintiff is lying.  So with the potential of attacking the plaintiff's credibility with showing he may be a liar, why didn't the defendant check the records ?  This points to one important aspect of any prior administrative review and judicial litigation, that the defendant has never called the plaintiff a liar by checking the actual documents.  The defendant, et al., has called and .or implied everything else about the plaintiff, but not a liar.  This is why it solicited the aid of the NTEU to booster negative impressions of the plaintiff.  Because the NTEU participated improperly and against NTEU regulations when facing the complaints reported by the plaintiff, it created credibility issues about the plaintiff from relying on built in prejudices for its own protection.  Now both the defendant and the NTEU are finger pointing  at each other in their "game of blame."

**Page 10, ¶ 1**:    The defendant's 'Opposition Motion' did not resolve the  conflicting lies that defrauded the Court  in the prior referenced litigation of <u>Ivey v. NTEU</u> as to how such circumstances  affected the determination of collateral estoppel, issue preclusion.

13

The defendant in citing <u>McLaughlin v. Bradlee</u> , 803, F 2d 1197, 1204 (DC Cir. 1986), page 10, ¶ 2, states, "issues that already have been decided in a full and fair proceeding." If the issues of attachment # 4 have now, with the present case been revealed to be in conflict as to validity, there exist indecision in fairness to the plaintiff, therefore, collateral estoppel does not apply.

**Conclusion:**

The defendant is putting the cart before the horse, with the cart being a refusal of joinder and amending, and the horse being the lies and false records. Such practice has been perpetuated by the defendant with the assistance of the NTEU. Consequently, from such and the above, the plaintiff's request for Reassignment of Judge, Motion for Joinder, and Amending of the complaint should be granted as filed.

14

## Certification of Service

The attached document was sent by mail to:

Office of the Clerk
US District Court for DC
333 Constitution Ave, N.W.
Washington, DC, 20001

And by regular mail to:

Jeffery Taylor/Robin Meriweather
Department of the Justice
555 Fourth St., NW
Washington, DC, 20530

_10-22-07_
Date

Steven Ivey
Plaintiff