**RECEIVED**

FEB - 6 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Steven Ivey, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CA No. 07-0748-EGS |
| V. ) | |
| ) | |
| HENRY PAULSON, Secretary, et al., ) | |
| ) | |
| Defendant. ) | |

## MOTION FOR LEAVE TO FILE PLAINTIFF'S REPLY TO DEFENDANT'S 01/11/08 SUPPORT OF MOTION TO DISMISS

The plaintiff request Leave of Time to file a reply to defendant's January 11, 2008 Support of Motion to Dismiss. Due the Court's decision in other related claims as filed by the plaintiff in case no. 08-0134, <u>Ivey v. Paulson</u>, DC District it has come to the attention of the plaintiff that discrepancies in judging the circumstances of res judicata/preclusion for dismissals exist in the Court review. This has resulted in the plaintiff filing a Motion for Reconsideration for such related case, 08-0134, to correct assessment regarding res judicata/preclusion. Therefore, the plaintiff is requesting a Leave of Time to file a reply to the defendant's most recent opposition, 01/11/08, to address these discrepancies in the present case. Granting the request for Leave of Time will assist the Court in more accurately reviewing issues of preclusion and prevent contradicting decision within the Court for the present case as revealed in related case 08-0134., thus, serving the interest of justice and judicial efficiency. The plaintiff has notified the defendant of the request. Given the numerous extensions requested and given to the defendant, granting Leave of Time will not cause undue harm to the defendant.

1

## Certification of Service

The attached document was sent by mail to:

Office of the Clerk
US District Court for DC
333 Constitution Ave, N.W.
Washington, DC, 20001

And by regular mail to:

Jeffery Taylor/Robin Meriweather
Department of the Justice
555 Fourth St., NW
Washington, DC, 20530

_Feb. 2, '08_
Date

_Steven Ivey_ (signature)
Steven Ivey
Plaintiff

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Steven Ivey, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action No. 07-0748 |
| V. | ) | |
| | ) | |
| HENRY PAULSON, Secretary, et al., | ) | |
| U.S. Department of the Treasury, | ) | |
| | ) | |
|     Defendant. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S 01/11/08 SUPPORT OF
MOTION TO DISMISS**

      The following contributes to the proper understanding of the issues of preclusion, because it discusses the circumstances of a time frame for the filings of any prior cases that the defendant has cited for dismissal on issues of preclusion. The defendant has failed to cite any such time line when requesting dismissal under preclusion. The defendant in it's request for dismissal and opposition motion merely references prior proceedings but does not specifically cover the issues as to when the plaintiff became aware of each claims nor how later claims effected the prior filings. Significant reasoning is that, for (1) the defendant on P. 5, ¶ 1, is attempting to mislead the Court by wrongfully stating that the plaintiff citing the Treasury in DC District as setting the standards is improper, because if this were not true then the standards would be set in the local IRS Processing Center, not in DC, this is not accurate; ( 2) the defendant during the proceedings for related case 04-0214, <u>Ivey v. Dept. of Treasury,</u>

1

DC District produced the records as obtained in DC, so why is the defendant now saying that such records are in the N. GA District ?; and (3) the defendant has failed to hold accountable or make corrections for any grievances committed against taxpayers, other employees, and the plaintiff, thus, there is a continuous practice of resulting harm to the plaintiff. Such continuing failure establishes a time line which effects the plaintiff's claims of rating and ranking for the present case. The defendant has in fact encouraged the prevention of proper resolve of the rating and ranking issues. The resulting timeline should have been included in the defendant's request for dismissal under preclusion. The below explains the related claims in which a fact pattern of the defendant is established and provides some insight into the time line effecting the plaintiff's claims.

      The claims of age discrimination of the plaintiff were not made know to him until the TIGTA file, attachment # 12, was supplied to him in documents obtained in related case 04-01214, Ivey v. Dept. of Treasury, DC District in December 2005; this is similar for issues of retaliation and intimidation. The Court in it's Memorandum Opinion, P. 2, ¶ 1, attachment # 16, for related 08-0134, DC District, Ivey v. Paulson cites prior cases of claims of the plaintiff against the defendant, Ivey v. Snow, 04-0394, 04-0395 & 04-0396, N, GA District, ( Ivey v. Paulson, 2007 WL 216284), which were filed in January 2004. Therefore, the plaintiff could not have possibly filed any of the present claims as re-addressed with the EEOC, Exhibit D, in these prior cases; which included not only the more recently discovered age discrimination but those of retaliation and intimidation from the continuous discriminatory actions of the defendant. The prior case as cited in DC District of Ivey v. Snow, no. 05-2277, (later transferred to N. GA

District as case no. 06-2706, Ivey v. Snow ), regarding the claims of age discrimination was dismissed because the plaintiff had not at that point exhausted administrative remedies. Therefore, the plaintiff re-addressed such claims with the EEOC, Exhibits D. Thus, the plaintiff could not have grouped age discrimination with any cases until the EEOC administrative process had been concluded. From Exhibit D the date for such was August 29, 2007.

In relation to cited prior case Ivey v. Snow , case no. 04-1377, DC District, (later transferred to N. GA District as case no. 05-1150, Ivey v. Snow ) the filing was July 2004. This was prior to the plaintiff receiving the TIGTA file in December 2005, thus, the later claims of age discrimination , retaliation, and intimidation could not have been filed with or amended to the such prior case. The claims would, additionally, had to have been addressed to the EEOC before filing them with any prior case.

Additionally, the re-addressing of claims filed for the present case stem in part from the recent Supreme Court decision, attachment # 15, Burlington Northern and Santa Fe Railway Co. v. White ; case no 05-259, June 22, 2006. In this decision, attachment # 12, P. 13, line # 14, describes how, 'White filed a second retaliation charge with the Commission. ' How is it that White for such case can filed additional claims with the EEOC, leading to civil actions but not the plaintiff for the present case ? The Court in it's Memorandum Opinion, attachment # 16 for related case, 08-0134, did not distinguish a time line for when the plaintiff had to file EEOC complaints in relation to when a civil action is filed for such complaints while citing res judicata as justification for dismissal in the present case. The Court would, thus, need to cite a supportive time

frame, which it did not do for res judicata in dismissing. The distribution of how the claims were made know to the plaintiff, as committed by the defendant, was/is continuous and random, thus, the plaintiff's claims of intimidation in order to discourage the plaintiff in pursuing further corrective remedies followed a similar pattern; just as age discrimination was after any initial filings which are cited by the Court.

   Further support for the plaintiff's present case as having been properly filed can be seen in the lies and false records created from the contradictory circumstances, statements, and denials between the defendant and the National Treasury Employees Union, (NTEU), when related case Ivey v. NTEU , case no. 05-1147, DC District and Ivey v. Paulson , case no. 07-0748, DC District, are compared.  The resulting damaging circumstances are those cited for the present case, were filed after these two cases, because some of the plaintiff's claims for the present case are a result of the effects of lies and false records formulated against the plaintiff.  These factors also point to the plaintiff citing Burlington Northern and Santa Fe Railway Co. v. White , for action occurring off the employment cite. There may be, however, a need to address a time frame, which DC District has not done, because of what the Supreme Court concluded in, " that anti-retaliation provision does not confine the actions and the harm it forbids to those that are related to employment or occur at the workplace," attachment # 15, P. 1, ¶ 3. To this the plaintiff is raising, in the present case, the issues resulting from the lies and false records as having occurred after the prior filings in order to retaliate and intimidate so as to cause further harm beyond what was initially reported.  The dates of the filings with the EEOC would also demonstrate the inability of the plaintiff to file the

4

claims in any prior case.

Thus, from the above, the Court's dismissal under res judicata/preclusion, would be improper and unfair to the plaintiff. However, it can be seen that should the Court decide, change of venue would be proper. To further from the related case <u>Ivey v. NTEU</u>, 05-1147, DC District, it was determined that the plaintiff needed to exhaust administrative remedy of filing a complaint with the Fair Labor Relations Authority, (FLRA). The FLRA has supplied to the plaintiff their decision in November 2007, which was after the filings mentioned above This FLRA decision has a direct impact towards the claims of the present case. Such circumstances with the FLRA demonstrates that newer evidence and determinations were not available to the plaintiff in prior cases, but do reveal improper actions of the defendant and the NTEU. Therefore, from all or in part of the above, the Court is requested to deny dismissal to the defendant or grant change of venue. .

**Exhibits / Attachments:**

Exhibit D. EEOC Notice of Intent to Federal Operations.

12. Testimony of Pam Blackburn for the TIGTA file.
15. Supreme Court Decision, <u>Burlington Northern and Santa Fe Railway Co. v. White</u>; case no 05-259, June 22, 2006.
16. DC District's Memorandum opinion for related case 08-0134.

## Certification of Service

The attached document was sent by mail to:

Office of the Clerk
US District Court for DC
333 Constitution Ave, N.W.
Washington, DC, 20001

And by regular mail to:

Jeffery Taylor/Robin Meriweather
Department of the Justice
555 Fourth St., NW
Washington, DC, 20530

Feb 2, '08
Date

Steven Ivey
Plaintiff

Steven Ivey
7611 S. OBT, # 278
Orlando, FL, 32809

EEOC
Office of Federal Operations
PO Box 19848
Washington, DC, 20036

August 29, 2007

## NOTICE OF INTENT TO FILE CIVIL ACTION

Dear EEO,

In a June 29, 2007, letter I reported to your office EEO violations for:

**I. Complaints of Retaliation and Intimidation After Employment; and**

**II. Age Discrimination.**

With this present letter I am giving your office "Notice of the Intent to File a Civil Action" for <u>only</u> the two above listed areas of violations. This notice complies with, the rule of 60 days from originally reporting the violation prior to filing a civil action, and with the understanding of the rule for 30 days before the civil action can be filed.

If there is any reason why this should be delayed I can be reached at the above address.

Sincerely,

Steven Ivey

EXHIBIT D

FEB-15-200? 14:07
P.05/31

# COMPLAINT REFERRAL MEMORANDUM
(Response Required)

| | |
|---|---|
| 1. Address of Receiving Official<br>National Director, Commissioner's Complaint Processing and Analysis Group<br>1111 Constitution Avenue, NW  Room 6817<br>Washington, DC 20224 | Date Forwarded:<br>DEC 2 0 2000<br>Date Referral Due to TIGTA<br>JUN 2 0 2001 |
| 4. TIGTA Complaint Referral Number<br>C200007764 | 5. IRS Number | 6. "1203" Violation Alleged: ☐ Yes ☒ No |
| 7. Complaint Title or Name of Employee (Subject)<br>CONFIDENTIAL COMPLAINANT | 8. Position, Series and Grade |
| 9. Office (Headquarters) | 10. Post of Duty |

11. Remarks

12. Name, Signature, Title, and Telephone Number of TIGTA Official
Karen J. Parker, Assistant Special Agent-in-Charge
Complaint Management Division (202) 927-7187 fax (202) 927-7015

13. Address of the TIGTA Office Referring Complaint
Complaint Management Division
Post Office Box 589
Ben Franklin Station
Washington, DC 20044-0589

14. Name, Signature and Title of Receiving Official
Cristin Wickham  CCPAG

15. Date Received
1/5/01

16. Administrative Action(s) Taken and Effective Date(s) Proposed:
A. ☐ Clearance Letter Issued
B. ☒ Closed – No Action Taken
C. ☐ Oral or Written Reprimand/Admonishment
D. ☐ Suspension/Reduction in Grade
E. ☐ Removed/Terminated
F. ☐ Employee Resigned Prior to Adjudication
G. ☐ Returned – TIGTA agreed to Investigate
H. ☐ Other (Explain in Item 18)

17. Contact Person and Telephone Number
T. O'Brien  (770) 455-2214
Field Director, Submission Processing

18. Other Information

Effective Date(s): _____
Block 22 available for additional comments

19. Name, Signature, Title and Telephone Number of Returning Official
T. O'Brien, Field Director, ATSPC  (770) 455-2214

20. Date Returned to TIGTA
MAY - 1 2001

Form 2070 (Rev 01/2000)
Treasury Inspector General for Tax Administration

*Attachment #12*

Report Of Inquiry                     4            ECMS # 0101-4SVJPLCJ

probationary period because he was not performing. He was told he could resign, but he refused and was terminated. Pam also stated this individual is 40 + years old.

I asked Pam whom else I should interview. She recommended the following:

Kelly Mancle, Expansion Manager
Judy Jordan, Section Chief
Winda Daniels, Expansion Manager
Robert Hall, Expansion Section Chief
Lisa Lee, Expansion Manager.

Interview with Robert Hall, Night Expansion Section Chief 3/15/01 at 7:10 p.m. (Robert Hall replaced Judy Jordan as Section Chief, as Judy is currently on a detail).

I asked Robert if he recalled a conversation with a unit manager (page 6 of the letter dated 11/1/00) regarding a conversation relating to a return where the math looked correct but was not and if he observed anyone looking at him during the conversation. Robert does not recall the conversation. I asked if Winda Daniels was one of his managers. He stated that she was. I asked if he was aware of a complaint by an employee that employees and managers were bumping the back of his chair intentionally. Robert was not aware of this, but said that Winda Daniels might be aware of it. I asked if Robert received complaints on the noise level. He said he did not receive any direct complaints from anyone. However, as a Section Chief, he would walk around on the floor if it got noisy. He said that as a new Section Chief, he was on the floor often. I asked if he knew if someone was given an invitation to a "gay pride party." He said he did and that the person who gave the invitation ▓▓▓ works in his Section. The manager, Kelly Mancle, counseled ▓▓▓▓▓▓ and told him not to do it again. ▓▓▓▓▓▓▓ had said he didn't think it would offend anyone. Robert said that the invitation also had something to do with a pool party and naked people and that it was given to both straight and gay employees.

Robert stated that he thought the Complainant was the same individual who was fired last week. Someone from Labor Relations/NTEU attended the meeting to terminate Steve Ivey and he brought up all of the stuff mentioned as issues in the complaint letter; i.e., managers and employees bumping his chair etc. He (Steve Ivey) also admitted in this meeting that "he got his own work off the carts." He was being fired for performance issues in not meeting the TEPS base points. He brought up the fact that he received work that was not legible.

I asked Robert if he addressed the noise level issues. He said he did address the noise issue during unit meetings and that he also walked around the units much of the time.

Cite as: 548 U. S. ____ (2006)    1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–259

BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, PETITIONER v. SHEILA WHITE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 22, 2006]

JUSTICE BREYER delivered the opinion of the Court.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub. L. 88–352, §704, 78 Stat. 257, as amended, 42 U. S. C. §2000e–2(a). A separate section of the Act—its anti-retaliation provision—forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. §2000e–3(a).

The Courts of Appeals have come to different conclusions about the scope of the Act's anti-retaliation provision, particularly the reach of its phrase "discriminate against." Does that provision confine actionable retaliation to activity that affects the terms and conditions of employment? And how harmful must the adverse actions be to fall within its scope?

We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are

*Attachment # 15*

related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

# I
## A

This case arises out of actions that supervisors at petitioner Burlington Northern & Santa Fe Railway Company took against respondent Sheila White, the only woman working in the Maintenance of Way department at Burlington's Tennessee Yard. In June 1997, Burlington's roadmaster, Marvin Brown, interviewed White and expressed interest in her previous experience operating forklifts. Burlington hired White as a "track laborer," a job that involves removing and replacing track components, transporting track material, cutting brush, and clearing litter and cargo spillage from the right-of-way. Soon after White arrived on the job, a co-worker who had previously operated the forklift chose to assume other responsibilities. Brown immediately assigned White to operate the forklift. While she also performed some of the other track laborer tasks, operating the forklift was White's primary responsibility.

In September 1997, White complained to Burlington officials that her immediate supervisor, Bill Joiner, had repeatedly told her that women should not be working in the Maintenance of Way department. Joiner, White said, had also made insulting and inappropriate remarks to her in front of her male colleagues. After an internal investigation, Burlington suspended Joiner for 10 days and ordered him to attend a sexual-harassment training ses-



sion.

On September 26, Brown told White about Joiner's discipline. At the same time, he told White that he was removing her from forklift duty and assigning her to perform only standard track laborer tasks. Brown explained that the reassignment reflected co-worker's complaints that, in fairness, a "'more senior man'" should have the "less arduous and cleaner job" of forklift operator. 364 F. 3d 789, 792 (CA6 2004) (case below).

[9.] On October 10, White filed a complaint with the Equal
[10.] Employment Opportunity Commission (EEOC or Commis-
[11.] sion). She claimed that the reassignment of her duties
[12.] amounted to unlawful gender-based discrimination and
[13.] retaliation for her having earlier complained about Joiner.
[14.] In early December, White filed a second retaliation charge
[15.] with the Commission, claiming that Brown had placed her under surveillance and was monitoring her daily activities. That charge was mailed to Brown on December 8.

A few days later, White and her immediate supervisor, Percy Sharkey, disagreed about which truck should transport White from one location to another. The specific facts of the disagreement are in dispute, but the upshot is that Sharkey told Brown later that afternoon that White had been insubordinate. Brown immediately suspended White without pay. White invoked internal grievance procedures. Those procedures led Burlington to conclude that White had *not* been insubordinate. Burlington reinstated White to her position and awarded her backpay for the 37 days she was suspended. White filed an additional retaliation charge with the EEOC based on the suspension.

B

After exhausting administrative remedies, White filed this Title VII action against Burlington in federal court. As relevant here, she claimed that Burlington's actions— (1) changing her job responsibilities, and (2) suspending



JAN 24 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN IVEY,

    Plaintiff,

v.       Civil Action No. 08 0134

HENRY PAULSON, Secretary,
United States Department of the Treasury,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on plaintiff's application to proceed *in forma pauperis* and *pro se* complaint. The Court will grant the application, and will dismiss this action with prejudice.

Plaintiff brings yet another civil action pertaining to his past employment as a seasonal data transcriber with the Internal Revenue Service ("IRS"). *See, e.g., Ivey v. Paulson*, No. 05-16157, 2007 WL 216284, at *1 (11th Cir. Jan. 29, 2007) (per curiam) (considering consolidated appeals challenging district court's grant of summary judgment in three cases "aris[ing] out of Ivey's previous employment as a seasonal data transcriber with the [IRS] in its Chamblee, Georgia office between January 1999 and March 2001"), *cert. denied*, 128 S.Ct. 177 (2007); *Ivey v. Snow*, No. 06-CV-2706-JOF-ECS, 2007 WL 2418877, at *1 (N.D. Ga. June 7, 2007) (Final Magistrate Report and Recommendation describing plaintiff's "three separate lawsuits in [the Northern District of Georgia] regarding his prior employment with the IRS"). In the instant civil action, plaintiff purports to bring an age discrimination claim, *see* Compl. at 8-9 (¶¶ 18-20), as well as civil rights claims under 42 U.S.C. §§ 1981, 1983 and employment discrimination claims

Attachment #18
3

under 42 U.S.C. § 2000e against the Secretary of the Treasury. *Id.* at 23. Plaintiff has raised an age discrimination claim once before in this district, *Ivey v. Snow*, No. 05-2277 (EGS), 2006 WL 2711523 (D.D.C. Sept. 21, 2006) (Memorandum Opinion and Order transferring action), and the United States District Court for the Northern District of Georgia resolved the claim on the merits. *See Ivey v. Snow*, No. 06-CV-2706-JOF, 2007 WL 2478886, at *3 (N.D. Ga. Aug. 28, 2007) (adopting Magistrate Report and Recommendation to dismiss complaint for plaintiff's failure to exhaust administrative remedies). Similarly, plaintiff has raised both employment discrimination and civil rights claims against the Secretary of the Treasury, and those claims have been decided against him. *See, e.g., Ivey v. Paulsen*, 2007 WL 216284, at *2-4 (affirming district court's grant of summary judgment on Title VII claims for plaintiff's failure to establish *prima facie* case of discrimination based on race, color, religion, sex, or national origin, retaliation for engaging in protected activity, or sexual or racial harassment); *Ivey v. Paulson*, No. 07-cv-478, 2007 WL 1129001 at *2-3 (M.D. Fla. Apr. 16, 2007) (dismissing claims under 42 U.S.C. §§ 1981, 1983, 1986, 1988 and 2000e); *Ivey v. Snow*, 2007 WL 2478877 at *1 n.1 (noting dismissal of employment discrimination action transferred from this Court for lack of prosecution); *Ivey v. Snow*, Civ. No. 04-1377 (EGS), 2005 WL 758259 (D.D.C. Apr. 1, 2005) (Memorandum Opinion and Order transferring Title VII action to the United States District Court for the Northern District of Georgia).

Generally, a plaintiff is expected to "present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence." *U.S. Indus., Inc. v. Blake Const. Co., Inc.*, 765 F.2d 195, 205 (D.C. Cir. 1985) (citation omitted). Under the doctrine of *res judicata*, a prior judgment on the merits of a plaintiff's claim bars the relitigation of the claim

and any other claims that could have been submitted to the Court. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (*res judicata* bars not only those issues that were previously litigated, but also those that could have been but were not raised); *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983) (noting that *res judicata* "forecloses all that which might have been litigated previously"); *Flynn v. 3900 Watson Place, Inc.*, 63 F. Supp. 2d 18, 22 (D.D.C. 1999) (quoting *Shin v. Portals Confederation Corp.*, 728 A.2d 615, 618 (D.C. 1999)); see *Gullo v. Veterans Coop. Hous. Ass'n*, 269 F.2d 517 (D.C. Cir. 1959) (per curiam) (affirming dismissal on ground of *res judicata* where district court took judicial notice of previous case).

Here, review of this Court's docket and reported cases from other federal courts shows that plaintiff either has raised or has had an opportunity to raise the claims set forth in the instant complaint. The Court therefore concludes that plaintiffs' claims are barred under the doctrine of *res judicata*. Accordingly, the Court will dismiss this action with prejudice. An Order consistent with this Memorandum is issued separately on this same date.

/s/ Reggie B. Walton
United States District Judge

Date: December 26, 2007

3